IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAMIAN M. MIRANDA,<br><br>        Plaintiff,<br><br>vs.<br><br>LAW OFFICE OF D. SCOTT CARRUTHERS, et. al,<br><br>        Defendants.<br>_____ / | CASE NO. 1: 10-cv-01487 - BAM<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** |

     Pending before the Court is Damian Miranda's ("Plaintiff") Motion for Default Judgment pursuant to Rules 37 and 55 of the Federal Rules of Civil Procedure, filed on October 18, 2011. (Doc. 62.) Defendants Law Office of D. Scott Carruthers and Dennis Scott Carruthers (collectively, "Defendants") filed an Opposition on December 21, 2011. (Doc. 73.) Plaintiff did not file a Reply. The Court heard argument on December 21, 2011. (Doc. 75.) Counsel Elizabeth J. Arleo appeared telephonically for Plaintiff. Scott Caruthers appeared telephonically in pro se. The parties consented to the conduct of all proceedings before the assigned Magistrate Judge. (Doc.'s 56, 69.) Having considered the moving and opposition papers, the declarations and exhibits attached thereto, arguments presented at the December 21, 2011 hearing, as well as the Court's file, the Court issues the following Order.

1

### I. FACTUAL AND PROCEDURAL BACKGROUND

On August 17, 2010, Plaintiff filed a Complaint against Defendant for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.,*(the "FDCPA") and the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1788-1788.32 (the "RFDCPA"). Plaintiff is a natural person from whom Defendants sought to collect an alleged debt. (Pl.'s Compl., ¶¶ 6, 22, Doc. 1.) Plaintiff's claims arise from a dunning letter (the "Subject Letter") sent by Defendants to Plaintiff on or about April 12, 2010 in an attempt to collect on the alleged debt. (Pl.'s Compl., ¶ 23, Doc. 1.) The Subject Letter contained the heading: "NOTICE OF PENDING COURT PROCEEDINGS." (Pl.'s Compl., ¶ 25, Attach. 1, Doc. 1.) Plaintiff alleged that, because no lawsuit was "pending" as of April 12, 2010, the statement that a court proceeding was "pending" violated numerous portions of the FDCPA and RFDCPA. (Pl.'s Compl., ¶ 34, Doc. 1.)[1] Plaintiff sought an award of actual and statutory damages, as well as the costs of litigation and reasonable attorneys' fees. (Pl.'s Compl., 9-10, Doc. 1.)

On October 26, 2010, Defendants filed their Answer to Plaintiff's Complaint. (Doc. 6.) On November 15, 2010, Plaintiff filed a motion to strike Defendant's affirmative defenses. (Doc. 7.) Defendants filed a statement of non-opposition to Plaintiff's motion to strike Defendant's affirmative defenses on February 2, 2011 (Doc. 18), and the Court granted Plaintiff's motion to strike on May 23, 2011. (Doc. 30.)

On March 29, 2011, Plaintiff filed a Motion for Partial Summary Judgment as to Defendants' liability under the FDCPA and the RFDCPA, reserving the issue of damages for trial. (Pl.'s Mot. Summ. J., 1: 2-4, Doc. 22.) Defendants filed their Opposition to Plaintiff's Motion for Summary Judgment on April 15, 2011. (Doc. 26.) On May 23, 2011, the Court held that the Subject Letter's reference to "pending court proceedings," when no such court proceedings existed, violated the

---

[1] Plaintiff additionally argued that other aspects of the Subject Letter violated the FDCPA and RFDCPA. (Pl.'s Compl., ¶ 32-39, Doc. 1.) As reflected in United States District Judge Oliver W. Wanger's Order on Plaintiff's Motion for Summary Judgment, however, those arguments are irrelevant to the Court's instant analysis. (Order, Pl.'s Mot. Summary Judgment, Doc. 30.)

FDCPA and the RFDCPA.[2] (Mem. Order, 10-16, Doc. 30.)

On July 5, 2011, Plaintiff propounded a third set of special interrogatories on Defendants. (Pl.'s Mot. For Default J., 1: 10-12, Doc. 62.) Plaintiff's interrogatories sought information concerning: (1) the lawsuits and agency complaints arising from Defendant's debt collection activity; (2) the number of persons to whom defendant sent letters containing the statement "notice of pending court proceedings" prior to the time any lawsuit was filed; and (3) Defendant's financial assets. (Pl.'s Mot. To Compel, 1: 20-27, Doc. 35.)

Defendants filed an Opposition which largely failed to address the merits of Plaintiff's motion to compel; instead arguing that because liability had already been determined, the motion was an attempt to "run[] up" attorney fees. (Defs.' Opp'n To Mot. To Compel, 2: 3-7, Doc. 40, Attach. 1.) Defendants attempted to argue that further litigation was unnecessary by suggesting they would "stipulate to damages being entered for the sum of $1,000.00, thereby obviating attorney Arleo's "need" for the requested information." (Defs.' Opp'n To Mot. To Compel, 2: 3-7, Doc. 40, Attach. 1.)

On August 26, 2011, United States Magistrate Judge Sandra M. Snyder granted Plaintiff's Motion to Compel. (Doc. 52.) Judge Snyder, however, in ruling on Plaintiff's request for attorneys' fees, reserved judgment as to *the necessity of bringing* the Motion to Compel. (Doc. 52, ¶ 4.) Plaintiff submitted a supplemental declaration in further support of Plaintiff's request for attorneys' fees (Doc. 53), however, the Court did not award Plaintiff attorney fees for bringing the motion to compel.

On August 25, 2011, Plaintiff brought a Motion to Enforce Settlement Agreement. (Doc. 48.) Plaintiff's Motion to Enforce Settlement Agreement was predicated on Defendants' proposed stipulation in their previous opposition papers that they would stipulate the damages being entered for the sum of $1,000.00 for Plaintiff's statutory claims. (Doc. 48, 1: 5-20, Attach. 1.) On September 30, 2011, Plaintiff brought a Motion to Amend his Complaint, seeking to claim emotional distress damages under his FDCPA and RFDCPA claims. (Doc. 58.) On October 21, 2011, Plaintiff

---

[2] The Court found issues of fact with respect to Plaintiff's other theories of liability under the FDCPA and the RFDCPA, thus, rendering summary judgment inappropriate. (Doc. 30.)

1  withdrew his Motion to Enforce Settlement Agreement, as well as his Motion to Amend Complaint.
2  (Doc. 65.)
3      On October 18, 2011, Plaintiff brought the instant Motion for Default judgment, pursuant to
4  Rules 37 and 55 of the Federal Rules of Civil Procedure.  Specifically, Plaintiff claims that default
5  against Defendant should be entered as a sanction for Defendant's failure to comply with Judge
6  Snyder's previous discovery order.  (Pl's. Mot. for Default, 1: 23-28, Doc. 62, Attach. 1.)  Defendant
7  filed an Opposition on December 1, 2011 which failed to address the merits of Plaintiff's Motion;
8  instead arguing that Plaintiff's Motion for Default was yet another unnecessary filing to inflate
9  Plaintiff's attorney fees.  (Doc. 73.)

## II. DISCUSSION

**A. Legal Standard**

Under Rule 37(b),[3] "a district court may impose sanctions, including default, for failing to comply with a court order." *Dreith v. Nu Image, Inc.,* 648 F.3d 779, 786 (9th Cir. 2011); Fed R Civ P 37(b). The district court is also empowered to impose default as a sanction for discovery misconduct. *Id.* In determining whether to enter default pursuant to Rule 37(b), a district court must consider 1) the public's interest in expeditious resolution of litigation, 2) the court's need to manage its docket, 3) the risk of prejudice to the opposing party, 4) the public policy favoring disposition of cases on their merits, and 5) the availability of less drastic alternatives. *In re Exxon Valdez,* 102 F.3d 429, 432 (9th Cir. 1996) (*citing Thompson v. Hous. Auth.,* 782 F.2d 829, 831 (9th Cir.1986))  When a court order is violated, the first and second factors generally favor default and the fourth cuts against them. *Computer Task group, Inc. v. Brotby,* 364 F.3d 1112, 1115 (9th Cir. 2004).  Thus, the propriety of ordering default will often turn on the third and fifth factors. *Id.*

/./././

---

[3] Plaintiff has additionally requested default pursuant to Rule 55. Rule 55 deals with circumstances where "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . ." Fed. R. Civ. P. 55.  No such circumstances are present here. Defendants have actively participated in this litigation, including the filing of an answer, participating in the discovery process and opposing motions. Rule 55 does not authorize a default judgment for a failure to obey a discovery order. Accordingly, the court will only address whether the sanction of default is warranted under Rule 37.

Defendants have failed to address the legal or factual merits of Plaintiff's request for a default judgment. Plaintiff has alleged Defendants have not produced the information required to be produced in the Court's August 26, 2011 Order, and Defendants do not disagree. Defendants also do not challenge the legal basis for default asserted by Plaintiff. Instead, Defendants have argued the instant motion is yet another attempt by Plaintiff's counsel to inflate her attorney fees. Defendants' failure to address the merits of, or present a single legal or factual argument in opposition to Plaintiff's Motion alone inclines the Court to grant default. Even applying the various factors discussed above, however, the Court finds the entering of default appropriate.

### 1. The Public's Interest in Expeditious Resolution of Litigation and the Court's Need to Manage its Docket (Factors 1 & 2)

The first two factors favor default. The Fresno Division of the United States District Court for the Eastern District of California is one of the busiest and backlogged courts in the country. Considering (1) the merits of this case have long been determined, (2) Plaintiff's damages are provided by statute, and (3) the only remaining issue in dispute is Plaintiff's attorney fees, the Court's interest in managing its docket and the public's interest in expeditious resolution of this matter strongly favor default.

### 2. The Risk of Prejudice to Defendants.

A default against a Defendant, in most circumstances, is prejudicial to at least some degree. In this case, however, the Court's refusal to enter a default would risk *greater* prejudice to Defendants. Throughout these proceedings, Defendants consistently have failed to address the underlying merits of Plaintiff's many, and often unnecessary motions. Defendant's lone argument in each and every instance is that Plaintiff's motive in prolonging discovery and motion practice is to inflate his attorney's fees.[4]

Here, liability has been established under the FDCPA and RFDCPA. Defendants have represented to this Court they would stipulate to the maximum statutory damages ($1,000.00). Thus, the only remaining issue in this case is Plaintiff's attorneys' fees. Were the Court to deny

---

[4] Under the FDCPA and RFDCPA, reasonable attorney fees are authorized by statute to a prevailing plaintiff. 15 U.S.C. § 1692k(a)(3).

5

Plaintiff's request for default, the Court would not only be required to impose monetary sanctions for Defendants' failure to comply with a discovery order, but indeed, Plaintiff would undoubtedly continue to pursue discovery and file motions. Thus, the wrongs Defendants consistently have railed against, i.e., the continued inflation of Plaintiff's attorneys' fees, would persist. Accordingly, the Court finds that entering default would *avoid* prejudice to Defendants.

### 3. Public Policy Favoring Disposition of Cases on Their Merits

Liability under the FDCPA and RFDCPA in this case has already been established. Accordingly, default will not conflict with the public policy favoring disposition of cases on their merits.

### 4. Availability of Less Drastic Sanctions

Defendants have disobeyed an order of this Court. Defendants have not intimated an intention to comply with this Court's discovery order. Sanctions, thus, are appropriate. Because liability is already determined and damages are proscribed by statute, the only remaining issue before the Court is how much money Defendants will be forced to pay in attorneys' fees. Under these circumstances, the imposition of monetary sanctions would impose a *more* drastic sanction than simply imbuing some finality to the matter, leaving the issue of attorneys' fees to the Court's discretion.

Based on the foregoing, and in the interests of justice, the Court will grant Plaintiff's motion for sanctions pursuant to Rule 37 and enter default against the Defendants.[5]

/././

---

[5] Plaintiff requests the Court take judicial notice of the following public documents: (1) *Smith v. Account Mgmt. Assocs., Inc.,* No. 06-cv-371 JVS (ANX) (C.D. Cal., Oct. 26, 2007) (Doc. 44, 45) (amended order granting application for default judgment); *Sokolik v. Wells Fargo Bank, N.A.,* No. CI63710 (Sup. Ct. Ca., Tehama, Hon. C. Todd Bottke, presid., Sept. 9, 2011)(Ruling on motion for attorney fees); *Scott v. Federal Bond and Collection Service, Inc., et al.,* No. 10-cv-2825 LHK (N.D. Cal.) (same); *Puthuff v. Lehahan Law Office,* No. 05-cv-00617 AWI (DLB) (E.D. Cal., Nov. 4, 2005). Federal Rule of Evidence 201(b) allows federal courts to take judicial notice of documents that are "not subject to reasonable dispute in that . . . [they are] capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." The decisions of state and federal courts in California qualify as documents that are not subject to reasonable dispute and whose accuracy can not reasonably be questioned. Accordingly, the Court grants Plaintiff's request for judicial notice for Exhibits 1-5 to Attachment 6 of Plaintiff's Motion for Default Judgment.

**B.      Damages**

      **1.      Plaintiff's Damages Under the FDCPA and RFDCPA**

Plaintiff's Motion for Default request actual damages as a result of the emotional distress Plaintiff suffered from receiving the Subject Letter, as well as statutory damages proscribed by statute under the FDCPA and RFDCPA. (Pl's. Mot. for Default, 10-12, Doc. 62, Attach. 1.)

          **i.      Actual Damages**

Under the FDCPA, a prevailing plaintiff may be entitled to actual damages as a result of the defendant's failure to comply with the Act.  15 U.S.C. § 1692k(a)(1).  Plaintiff claims to have suffered an unspecified amount of actual damages in the form of emotional distress resulting from receipt of the Subject Letter.  (Pl's. Mot. for Default, Attach. 4, Doc. 62.)

Plaintiff is not entitled to any actual damages.  Plaintiff's Complaint does not plead any allegations to support a claim for actual damages or emotional distress in his Complaint.  Plaintiff's proposed First Amended Complaint endeavored to make such claims, however, Plaintiff's motion to amend his complaint was withdrawn and the First Amended Complaint is not the operative pleading. Because Plaintiff's Complaint makes no allegations to support a claim for actual damages or emotional distress, there is no basis to award actual damages on an entry of default judgment as to Plaintiff's original Complaint.

          **ii.      Statutory Damages**

Under the FDCPA, a prevailing plaintiff may receive up to $1,000.00 in statutory damages. 15 U.S.C. § 1692k(a)(1).  Similarly, under the RFDCPA, a prevailing plaintiff may receive up to $1,000.00 in statutory damages.  Cal. Civ. Code § 1788.30(b).  Plaintiff has cited a long line of cases from federal courts sitting in California and other jurisdictions where the maximum statutory damages were awarded in FDCPA cases on default judgment, which the Court will not repeat here. (Pl's. Mot for Default, 11: 8-28, Doc. 62, Attach. 1.)  Defendant has not made any arguments that the maximum statutory damages should not be awarded.  On the contrary, Defendants have previously stated they would "stipulate to damages being entered for the sum of $1,000.00" (Defs.' Opp'n To

Mot. To Compel, 2: 3-7, Doc. 40, Attach. 1.)[6] Liability previously has been found for violation of the FDCPA and RFDCPA. Accordingly, the Court imposes the maximum statutory damages permitted under the FDCPA and the RFDCPA, and finds that Plaintiff is entitled to statutory damages in the amount of $2,000.00.

**C.     Plaintiff's Attorney Fees**

Plaintiff's counsel has asked for $36,550.62 in attorneys fees and costs. The request is based on 94.1 hours at a rate of $350.00 an hour, paralegal fees in the amount of $315, and costs in the amount of $3,300.62. (Pl.'s Mot. For Default, 24: 11-14, Doc. 62.)

**1.     Legal Standard For An Award of Attorney Fees In FDCPA Cases**

"[I]n the case of any successful action to enforce . . . [liability under the FDCPA], the costs of the action, together with the reasonable attorney's fee as determined by the court" will be included in the amount of the debt collector's liability. 15 U.S.C. § 1692k(a)(3). An award of attorneys' fees pursuant to section 1692k(a)(3) is mandatory. *See Graziano v. Harrison,* 950 F.2d 107, 113 (3d Cir.1991) ("[A]ttorney's fees should not be construed as a special or discretionary remedy; rather, the [FDCPA] mandates an award of attorney's fees ...").

In *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933 (1983), the Supreme Court outlined the proper method for determining reasonable attorneys' fees using the lodestar method. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* at 433. There is a strong presumption that the lodestar formula represents a reasonable fee. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565, 106 S.Ct. 3088 (1986). In addition, the court will deduct any hours not reasonably expended, such as those that are "excessive, redundant, or otherwise unnecessary." *Id.* at 434.

---

[6] It is unclear if Defendants were suggesting they would stipulate to $1,000.00 total (i.e., for violations of both the FDCPA and the RFDCPA), or $1,000.00 for the FDCPA and $1,000.00 for the RFDCPA, for a total of $2,000.00. Based on the context in which this sentiment was expressed, i.e., Defendants would stipulate the maximum amount of damages, thus obviating the need to conduct further discovery, it would seem Defendants were referring to the latter. Regardless, because Defendants have not presented any argument that the maximum statutory damages should not be imposed, the Court will impose the maximum statutory damages for both the FDCPA and the RFDCPA.

Defendants have not presented any *specific* challenges to Plaintiff's request for attorneys fees. Defendants have not presented any evidence or argument regarding when Plaintiff began to engage in unnecessary litigation endeavors, or which unnecessary activities were performed. Defendants, rather, vehemently argue the general "unfairness" of facing inflated attorneys fees. Defendants failed to offer any concrete examples or to explain why such fees are inflated.

Plaintiff's counsel is advised that the Court strongly disagrees with the later strategy in this case. Plaintiff's actions since prevailing on the motion for summary judgment served a strategic purpose to increase attorney fees. Plaintiff prevailed on summary judgment on May 23, 2011. Defendants were found liable for violating the FDCPA and RFDCPA, and the only remaining issues related to Plaintiff's damages and Plaintiff's Counsel's attorney fees. No allegation in Plaintiff's Complaint supported a claim for actual damages, and Plaintiff was only entitled to receive statutory damages. Nonetheless, Plaintiff continued to conduct discovery on the merits of Plaintiff's claims. Plaintiff's counsel brought a motion to compel merits discovery, even though the information sought largely was unnecessary, considering Plaintiff had already prevailed on the merits. Indeed, Judge Snyder refused to grant Plaintiff's counsel the attorney fees requested in the motion to compel; instead, reserving judgment as to whether it was *necessary* to bring the motion. The Court has vast discretion in awarding attorney fees: "fees may be denied in their entirety when petitioning lawyers are guilty of overreaching in seeking outrageously unreasonable fees." *Farris v. Cox,* 508 F. Supp. 222, 227 (N.D. Cal. 1981) (holding that "[t]o discourage such overreaching and curb the practice of padding fee requests, the appropriate remedy in this case is to deny compensation . . .")

The Court finds unnecessary motions also were filed. Plaintiff's counsel brought a Motion to Enforce a Settlement Agreement under circumstances where no legal or factual basis existed to believe a settlement had been achieved. Plaintiff's counsel then brought a motion to amend Plaintiff's complaint - seeking to allege facts and claims which, even if valid, existed prior to the filing of Plaintiff's original complaint - only to withdraw the motion three weeks later. In the end, with only a slight change in this case, Plaintiff brought the motion which should have been brought after prevailing on the merits over six months previously - moved for a judgment on Plaintiff's statutory damages and Plaintiff's attorney fees.

**2.     Plaintiff's Hourly Fee Request**

"Reasonable fees are [...] to be calculated according to the prevailing market rates in the relevant community, with close attention paid to the fees charged by lawyers of reasonably comparable skill, experience, and reputation." " *Welch v. Metro. Life Ins. Co.,* 480 F.3d 942, 946 (9th Cir.2007)  Generally, the relevant community is the forum in which the district court sits. *Yahoo!, Inc. v. Net Games, Inc.,* 329 F. Supp.2d 1179 (N.D. Cal. 2004) ("the average market rate in the local legal community as a whole is a better approximation of the hourly rate that would be charged by reasonably competent counsel than the actual billing rate charged by a single attorney.")

Plaintiff's counsel requests an hourly rate of $350.00.  In support of this request, Plaintiff directs the Court to several cases where she has been awarded hourly rates between $300 and $350. (Pl's. Mot. for Default, Attach. 3, Doc. 62.)  Plaintiff's counsel also introduces the declarations of Ronald Wilcox and Karen M. Goodman, as well as the 2010-2011 United States Consumer Law Attorney Fee Survey Report, by Ronald L. Burdge.   (Pl's. Mot. for Default, Attach. 3, 5, Doc. 62.) Plaintiff's counsel also presents the results of her findings from a personal survey taken of other consumer law advocates in California whose hourly rate is $350.00 or greater. (Pl's. Mot. for Default, Attach. 3, Doc. 62.)

The evidence submitted by Plaintiff does not justify an hourly rate between $300-$350.  None of the cases previously granting her request for fees in excess of $300 an hour are from the Eastern District.  In other words, each case Plaintiff has previously been granted a rate in excess of $300 reflects the prevailing rates of other communities, not the Eastern District. The Court similarly is not persuaded by Plaintiff's reference to the United States Consumer Law Attorney Fee Survey Report, nor the declaration of Ron Wilcox or Karen Goodman.  These exhibits do not demonstrate that Mr. Wilcox, Ms. Goodman, Plaintiff's counsel or any other FDCPA practitioner in the Eastern District has been awarded an hourly rate of $350.00.

The Court's review of some of the most recent attorney fee awards in FDCPA cases indicate that the most common hourly rate awarded to plaintiff's counsel in FDCPA cases is $250.  *See, e.g., Hartung v. J.D. Bryider, Inc.,* 2009 WL 1876690 (E.D. Cal., 2009) ($250); *Lowe v. Elite Recovery Solutions*, 2008 WL 324777 at *5 (E.D. Cal. Feb. 5, 2008) ($250); *Valero v, Bryant, LaFayette and*

*Associates, LLC,* 2011 WL 1438436 (E.D. Cal. 2011) ($250); *Brablec v. Paul Coleman & Associates, P.C.,* 2010 WL 23062 (E.D. Cal., 2010) ($250); *Branco v. Credit Collection Services, Inc.* 2011 WL 6003877 (E.D. Cal. 2011) ($275).

While the Court has identified cases in which FDCPA practitioners were awarded $300-$315 hourly rates, *see e.g., Costa v. National Action Financial Services,* 2008 WL 1925235 (E.D. Cal., 2008) ($315)*; Johnson v. JP Morgan Chase Bank, N.A.,* 2010 WL 4977648 (E.D. Cal., 2010) ($300), those awards are outliers, not the prevailing rates. Conversely, assuming these larger fee awards are properly viewed as the upper-end of a sliding scale of rates, such rates would be reserved for those FDCPA practitioners with the highest degree of skill, experience and reputation. Based on Plaintiff's counsel's conduct, i.e., the filing of motions with no legal or factual basis and the prolonging of litigation to inflate attorney fees, the Court can not justify awarding Plaintiff's counsel a $350 hourly rate. As such, the Court establishes Plaintiff's hourly rate, based on prevailing rates in the community comparable to other FDCPA practitioners of similar skill, experience and reputation, at $250.

**2.     Counsel's Requested Number of Hours**

The Court must determine whether the requested number of hours is greater than, less than or the same number of hours that reasonably competent counsel would have billed. *Yahoo!, Inc.,* 329 F. Supp. 2d at 1184. If the requested number of hours is greater than the number of hours reasonably competent counsel would have billed, then the court should reduce the requested number of hours accordingly. *See Hensley,* 461 U.S. at 434, 103 S. Ct. 1933 (describing the court's duty to eliminate hours that are "excessive, redundant, or *otherwise unnecessary*") (emphasis added).

Plaintiff's counsel claims to have expended 94.1 hours litigating this matter. Plaintiff's counsel also requests $315 for three hours or work performed by her paralegal.[7]

---

[7] Plaintiff's counsel has not provided an itemization for any work performed by her "contract paralegal." Rather, Plaintiff's counsel simply states that she seeks "payment of $315 for three hours expended at $105 per hour on August 16, and 17, 2010 by contract paralegal Gaby Rivera for her assistance in reviewing and filing the complaint for grammatical and spelling errors, citations, formatting and compliance with local rules." (Pl's. Mot. for Default, Attach. 3, ¶ 16, Doc. 62.) Without any supporting documentation, however, there is not basis to award fees for Plaintiff's counsel's "contract paralegal." *See Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1210 (1986) ("In determining reasonable hours, [the party requesting fees] bears the burden of submitting detailed time records justifying the hours claimed to have been expended.") Accordingly,

11

*Plaintiff's Hours: Pre-Filing Through the Filing of Plaintiff's Complaint (6/15/2010 - 8/17/2010)*

Plaintiff has requested 5.2 hours for all time spent leading up to and including the filing of Plaintiff's Complaint, including discussions with Plaintiff, investigative research and the drafting and filing of the Complaint  The Court finds this amount of time to be reasonable and grants Plaintiff request for 5.2 hours.

*Plaintiffs Hours: Activity after the filing of Plaintiff's Complaint up to Plaintiff' Motion for Summary Judgment (8/18/2010 - 3/17/2011)*

Plaintiff has requested 20.7 hours for work performed after the filing of Plaintiff's complaint, but before Plaintiff's Motion for Summary judgment.  This works includes:(1) communications to Defendants' counsel (seven telephone calls, four emails, and three letters); (2) executing various documents with the Court, e.g., waiver of service, joint scheduling report; (3) preparing and filing a Motion to Strike Defendant's affirmative defenses; (4) preparing and propounding Plaintiff's written discovery to Defendants and meeting and conferring regarding the responses thereto; and (5) other miscellaneous case management and upkeep efforts.  The Court finds these hours to be reasonable, and grants Plaintiff's request for 20.7 hours for this period.

*Plaintiff's Motion For Summary Judgment (3/20/2011 - 6/6/2011)*

Plaintiff has requested 28.8 hours for work performed during the above-referenced period, most of which relates to Plaintiff's Motion for Summary Judgment.  Plaintiff requests 24.5 hours specifically relating to the Motion for summary judgment, including research and drafting the motion, reply brief, preparing for the hearing and drafting the proposed order.  The Court finds these hours reasonable.  Plaintiff also claims to have worked an additional 4.3 hours on other miscellaneous matters during this time period, including various communications to Defendants counsel, communications to Plaintiff, propounding discovery and reviewing their responses and meeting and conferring with Defendants regarding the same.  The court finds these hours reasonable and grants Plaintiff's request for 28.8 hours for this period.

---

the Court denies Plaintiff's request for $315 in paralegal fees.

*Plaintiff's Hours: All other Litigation Activity After June 6, 2011.*

The remaining 39.4 hours in Plaintiff's request relate to litigation activity taken after Judge Wanger granted Plaintiff's Motion for summary judgment. As discussed above, the majority of that time was spent engaging in what the Court considers unnecessary discovery and motion practice, and the Court will not award Plaintiff attorneys' fees for these endeavors. However, Plaintiff has requested 3 hours for preparing the instant motion for default judgment. The Court will grant Plaintiff's request for 3 hours for activity taken after June 6, 2011. The remaining 36.4 hours in this period, for the reasons discussed above, are denied.

Accordingly, the Court grants plaintiff's request for attorneys' fees in the amount of **$13,682.50,** representing 54.73 hours at the rate of $250 per hour.

### C.  Plaintiff's Request for Costs And Expenses

Plaintiff Requests $3,300.62 in expenses, representing: $350 filing fee, $140 process service fee; $73.98 for United Parcel Service charges; 93.15 for Xerox copies; $5.42 paid to the U.S. Postal Service, and $2,638.07 for Westlaw electronic research. Defendants do not specifically oppose these requests. Recoverable costs to a prevailing party are provided for in 28 U.S.C. § 1920. Section 1920 does not permit recovery of costs for United Parcel Service charges, U.S. Postal Service charges or Westlaw research. *See Id.* Accordingly, the Court grants Plaintiff's request for costs and expenses, excluding costs incurred for Westlaw research, United Parcel Service charges and U.S. Postal Service charges, in the amount of $657.13.

### III.  CONCLUSION

Based on the foregoing, the Court GRANTS in part, and DENIES in part, Plaintiff's Motion for Default Judgment. The Court ORDERS as follows:

1. A judgment of Default is entered against Defendants;
2. Plaintiff is entitled to statutory damages in the amount of $2,000.00;
3. Plaintiff is awarded attorney's fees and costs in the amount of $14,339.63.

/././

The Clerk of the Court is directed to enter judgment in favor of Plaintiff Damian M. Miranda and against Defendants Law Office of D. Scott Carruthers and Dennis Scott Carruthers.  The Clerk is directed to close this case.

IT IS SO ORDERED.

Dated:     **January 9, 2012**                              **/s/ Barbara A. McAuliffe**
                                                                                        UNITED STATES MAGISTRATE JUDGE